# In the Iowa Supreme Court

No. 23–0005

Submitted November 13, 2024—Filed December 13, 2024

**John Feller,**

Appellant,

vs.

**State of Iowa,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Michael Shubatt, judge.

Required sex offender registrant seeks further review of a court of appeals decision affirming the denial of his application for modification of registry requirements. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Philip B. Mears (argued) of Mears Law Office, Iowa City, for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy (argued), Louis S. Sloven, and Bridget A. Chambers (until withdrawal), Assistant Attorneys General, for appellee.

**Christensen, Chief Justice.**

But for the State's unusual procedural approach to the appellant's underlying charges, he would be off the sex offender registry by now. Instead, he is subject to lifetime registration unless a district court grants his application to modify his registration requirement. That did not happen, as the district court denied his application for a variety of reasons, ranging from the appellant's decision to testify by affidavit rather than personally and his courtroom demeanor to the letters and cards that the appellant sent his daughter with permission from the daughter's mother and his parole officer. The court of appeals affirmed this denial, and we granted the appellant's application for further review.

We now reverse the district court's ruling and remand for the entry of an order granting the appellant's application to end his lifetime registration. The appellant's evaluations demonstrate that he is a low risk to reoffend, he has successfully completed sex offender treatment, and he has lived in the community without issue for almost a decade since his release from prison. The district court abused its discretion by considering improper factors, and substantial evidence was not introduced that the appellant remains a threat to public safety.

## I. Background Facts and Proceedings.

In 2011, John Feller's fifteen-year-old stepdaughter, J.B., told her mother, Kayla, that Feller had been abusing her. The abuse began shortly after Kayla and Feller got engaged, and the couple had since married and had a biological daughter, L.F., together. When Kayla confronted Feller, he initially denied the abuse before admitting it and promising that it would not happen again. Kayla also asked Feller if he had abused L.F., who was around five years old, and Feller

responded that L.F. was too young. Kayla told Feller to pack his belongings and leave, then she contacted law enforcement.

In April 2011, the State charged Feller by trial information with lascivious acts with a child and third-degree sexual abuse for his conduct between 2007 and 2011. According to the minutes of testimony, Feller admitted to putting his finger in J.B.'s vagina, performing oral sex on her, touching her breasts, and forcing her to touch his penis directly or over his clothes. When he first started touching J.B., Feller described it as their "secret" and told her they had to keep it that way for the family to stay together. He told police that he did not touch L.F. because she was his biological daughter.

A memorandum of plea negotiation shows the State agreed to dismiss the sexual abuse charge and substitute a second count of lascivious acts with a child to the April 2011 trial information. While Feller was awaiting trial, his attorney sent him a letter detailing how "some temporary help" in the county attorney's office "opened a new case file instead of amending the old case file." According to Feller's attorney, the State was going to amend the old case file and dismiss the new one.

However, the State never altered its filings, and Feller pleaded guilty in two separate case numbers—FECR095382 and FECR096569—to lascivious acts with a child in violation of Iowa Code section 709.8(3) (2011) for what he did to J.B. The district court sentenced Feller to concurrent sentences of five years imprisonment on each count and a ten-year special sentence committing him to the custody of the Iowa Department of Corrections (DOC). It also ordered Feller to register as a sex offender "as required by Iowa Code Chapter 692A."

Upon entering prison in 2012, Feller submitted an "application for determination" to the Iowa Department of Public Safety (DPS) to establish his

sex offender registration (SOR) requirements. The DPS informed Feller that he was required to register "for a period of ten years." (Emphasis omitted.)

Feller discharged his term of incarceration in 2014 and again filed an application for his SOR determination in 2016. This time, the DPS informed Feller that he was required to register for life, writing:

You are required to register due to:

Your convictions [in] October 24, 2011[,] for Lascivious Acts with a Child, in violation of Iowa Code Section 709.8(3), case FECR95382, and Lascivious Acts with a Child, in violation of Iowa Code Section 709.8(3), case FECR96569.

According to Iowa Code Section 692A.102(1)(c)(26) and 692A.102(5), Lascivious Acts with a Child, Iowa Code Section 709.8(3), if committed against a person under thirteen years of age, is a Tier III sexual offense.

According to Iowa Code Section 692A.106(5), a conviction for a second/subsequent sex offense requires a sex offender to register for life.

(Emphasis omitted.) Feller did not challenge this determination and discharged his special sentence in 2018.

In December 2021, Feller applied to modify his SOR requirements under Iowa Code section 692A.128 (2021). The district court held a hearing on July 13, 2022, that included testimony from J.B. and Kayla opposing Feller's application primarily out of concern for L.F., who was fifteen years old at the time. They testified that Feller had been sending L.F. letters or cards almost monthly with permission from Kayla and his parole officer. The district court admitted several of those letters as exhibits. According to J.B., the letters that were admitted "had the most manipulative tactics in them that I wanted to show."

For example, one letter read as follows:

[L.] hope you are doing good have not heard from you in a long time be nice to get a card. I hope school went well be nice to know

how you are doing. Have a fun 4th of July. I Love you with all my heart and always will and I hope your summer vacation is good. Once again it would be nice to hear from you. Grandma Feller misses you to[o]!

Love always your Dad!

[P]lease send a card[!]

J.B., now a twenty-seven-year-old adult, explained that these letters used the same "type of manipulation techniques of jabbing, pushing at those home buttons, the family buttons" that he used to groom J.B. for abuse. Kayla testified that L.F. initially wrote back to her father and wanted to see his letters and cards, but L.F. stopped opening them and had not had any contact with Feller in a long time. According to Kayla, L.F. is "very scared that what happened to her sister will happen to her if she ha[s] any contact with him."

Feller did not testify, but he submitted an affidavit noting that he had completed sex offender treatment while incarcerated and on parole. He stated that he has had no criminal charges in the eight years since his release, including no SOR violations, and only learned that he would have to register for life when he discharged his sentence in 2014. Further, Feller declared that he has maintained full-time employment for the last eight years and has his own apartment and vehicle. He also submitted a 2021 letter from the department of correctional services documenting him as "a low risk to reoffend" based on the risk assessments it had conducted on him.

The district court denied Feller's application. In doing so, it found J.B. "to be an extremely credible witness and accept[ed] her unrebutted testimony as fact," giving "weight to her belief, which is based on her own experience and Feller's similar pattern with respect to his younger daughter, that Feller's obligation to register as a sex offender should continue." Other factors it

considered in determining that Feller "presents a significant enough risk to reoffend that he should continue to register as a sex offender" included Feller's demeanor at the hearing, lack of remorse, and pattern of behavior. The district court did acknowledge that it was "a difficult determination for the [c]ourt." The court of appeals, while also admitting that this was "a difficult case," affirmed. We granted Feller's application for further review.

## II. Analysis.

Feller challenges the district court's denial of his application to modify his SOR requirements. Here, the parties agree with the district court's conclusion that Feller met the threshold mandatory criteria for modification under Iowa Code section 692A.128(2), so the only issue on appeal is whether the district court abused its discretion in denying modification. *See id.* § 692A.128(5) ("The court may modify the registration requirements under this chapter."); *Fortune v. State*, 957 N.W.2d 696, 705 (Iowa 2021) ("If the applicant meets the threshold statutory requirements, the district court proceeds to the second step, namely, determining, in its discretion, whether the registration requirements should be modified."); *Becher v. State*, 957 N.W.2d 710, 714 (Iowa 2021).

"The provisions of sex offender registration are onerous. The direct and collateral consequences of sex offender registration include stigmatization, challenges in finding employment, restrictions on residency and movement, and difficulty in finding housing." *Fortune*, 957 N.W.2d at 709; *see also* Elizabeth Reiner Platt, *Gangsters to Greyhounds: The Past, Present, and Future of Offender Registration*, 37 N.Y.U. Rev. L. & Soc. Change 727, 759–64 (2013).

A district court commits an abuse of discretion in a SOR modification case "when it fails to consider a relevant factor, or considers an improper or irrelevant factor, on the question of whether the ongoing risks of danger from the sex

offender justifies continuation of the registration requirements." *Fortune*, 957 N.W.2d at 707. In exercising this discretion, "the district court must take care to ensure that public safety, and not punishment, provides the lens through which facts are evaluated." *Id.* We have previously explained that this requires the district court to consider *only* those factors related to whether the applicant is at low risk to reoffend such that extending the applicant's registry requirements has no substantial benefit to public safety. *Id.* at 706. To be clear, low risk does not equate to no risk, and "conclusory appeals to public safety do not defeat a modification application." *Id.*

"Where only proper factors have been considered, we find an abuse of discretion only where there is a clear error of judgment." *Id.* at 707. Here, however, the district court considered improper factors that were either not supported by the record or not related to whether extending Feller's registry requirements was a substantial benefit to public safety. These include Feller's choice to testify by affidavit instead of personally.

Notably, Iowa Code section 692A.128 does not even require a hearing on Feller's application, and the district court itself noted, "The law does not require [Feller] to testify . . . ." Plus, Feller's affidavit "was made under oath, admitted into evidence without objection from the State, and not rebutted by any other evidence in the record." *State v. Oltrogge*, No. 21–0776, 2022 WL 2824774, at *4 (Iowa Ct. App. July 20, 2022). The State could have cross-examined him, and contrary to a criticism that the district court raised, Feller's affidavit does indicate how he has changed.

Specifically, it states that Feller has lived in the community without a problem for almost a decade since his discharge from prison, he has completed sex offender treatment twice, once while incarcerated and again while on

supervision, and he is gainfully employed. *Cf. Becher*, 957 N.W.2d at 717 ("Becher has achieved ten years of compliance, is gainfully employed as a truck driver within the registration regime, and has managed to find a house in Dubuque that is not located within a prohibited geographic location for Becher as a tier III sex offender."). The same information was also relayed to the assessor who performed Feller's evaluations that concluded he was at low risk to reoffend. *See Oltrogge*, 2022 WL 2824774, at *4. Feller's successful adjustment to the SOR requirements and "time in the community without reoffense . . . is a *positive factor* that reduces the need for ongoing compliance with the registration requirements." *Becher*, 957 N.W.2d at 717. That Feller presented this testimony to the district court through affidavit instead of personally has little bearing on whether he is a public safety risk. Accordingly, the district court abused its discretion by discounting the information in Feller's affidavit simply because he did not testify in person. *See Oltrogge*, 2022 WL 2824774, at *4.

Similarly, the district court abused its discretion by relying on Feller's demeanor to find a lack of remorse. According to the district court, Feller's demeanor was one of "discomfort and avoidance," as he "did not make eye contact with the Court nor with the witnesses who testified." Courtroom demeanor can be a valid factor to consider, but the record in this case does not support the district court's reliance on it. *See State v. Seidell*, No. 21–0493, 2022 WL 951002, at *2–3 (Iowa Ct. App. Mar. 30, 2022) (noting the offender's facial expressions and demeanor during the victim's statement at the modification hearing indicated that the offender did not appreciate the impact of his actions on the victim). Nothing in the record suggests Feller's demeanor was dismissive, threatening, or otherwise inappropriate, and we fail to see how his apparent

"discomfort and avoidance" during an inherently uncomfortable court proceeding is evidence that he is a threat to reoffend.

Overall, Feller's remorse seemed to be a nonissue to the parties. The State did not mention it in its district court briefing or at the hearing, and nobody asked the witnesses about it. In *Fortune v. State*, we vacated the district court's denial of a modification application in part because "the district court erred in relying on a lack of remorse that did not have a factual basis in the record." 957 N.W.2d at 709. That observation applies here.

Moreover, the district court gave Feller's letters to L.F. too much weight, especially in its criticism of Feller for continuing to contact L.F. "when she wants nothing to do with him." Importantly, Feller sent the letters and cards to L.F. with permission from both L.F.'s mother, Kayla, and his parole officer. The record shows this permission occurred in 2012 and was renewed several times through 2017. Kayla told Feller's parole officer what limitations she wanted to impose on Feller's communication with L.F. For example, she said that Feller could send L.F. a card for her eighth birthday to "wish her [a] happy birthday and tell her he loves and misses her," but she did not want "a letter written in the card and [Feller] apologizing for this and that." Later, she allowed Feller to send L.F. a Valentine's Day card, but only "to wish her [a] happy V-day and tell her he loves her."

It is significant that no one told Feller to stop contacting L.F. through letters and cards. This is especially so considering there is no evidence that Feller's parental rights to L.F. were terminated, and his failure to attempt communication with L.F. could have been used against him in private termination proceedings. *See* Iowa Code § 600A.8(3)(*b*). Consequently, it was

improper for the district court to heavily weigh Feller's attempts to maintain a relationship with L.F. through letters and cards against him.

While we understand the district court's concern with the tone in some of the letters, they do not rise to a level that supports the district court's conclusion that Feller poses a sufficient risk of reoffense. Some of the letters are pushy and attempt to guilt L.F. into responding. For instance, Feller wrote in the card that he sent L.F. for her fourteenth birthday, "[L.] it[']s been another year you[']r[e] 14 now and I still have not heard from you wish you would sen[d] me a card or call my mom and say how you are doing . . . ."

But the State only provided a few examples, and according to J.B. they were the most manipulative of the letters that Feller sent L.F. over approximately a decade. At the beginning, Feller would write about their daily activities—things like the movies he watched in prison, religion, and L.F.'s schooling. When it became clear that L.F. had stopped writing back, his messages became more focused on getting L.F. to respond. Yet, the record shows that Feller has maintained his boundaries with L.F. by only attempting to contact her through mail. He has not tried to see her in person or call her on the phone. Moreover, the content of the letters is not inappropriate. Importantly, Feller has not initiated any other contact without permission from her mother or his parole officer. This would likely be a different case if Feller had contacted L.F. without permission.

"It may be possible to identify increased risk based upon what appears to be repeated patterns of behavior," but there are key distinctions between Feller's past behavior with J.B. and his present behavior in his writings to L.F. that weigh against finding Feller's behavior poses a risk to L.F.'s safety. *Fortune*, 957 N.W.2d at 709. When Feller was abusing J.B., he told J.B. that it was their "secret" and

warned her that disclosing it would tear apart their family. In contrast, L.F. is aware of Feller's status as a sex offender and what he did to J.B. There is nothing secretive about his communications with L.F., who no longer even reads them.

Likewise, Feller is not a part of their home. Kayla acted appropriately to protect her children from Feller as soon as J.B. disclosed the abuse by removing Feller from the home and divorcing him. She has also set limits on the type of communication Feller can have with L.F. and supports L.F.'s decision not to write back to Feller. As J.B. explained, Kayla is "strong-willed in the sense that she was going to do anything to protect us."

These facts are a far cry from the circumstances in *State v. Larvick*, No. 20–1273, 2022 WL 610361, at *3–4 (Iowa Ct. App. Mar. 2, 2022), which the district court relied on in ruling that Feller presents a significant risk to reoffend. In *Larvick*, the defendant sexually abused the oldest of his two daughters and "rekindled his relationship with . . . [their] mother" after he was released from prison. *Id.* at *3. At the same time, the youngest daughter was "approaching the age of the older daughter when [the defendant] sexually abused her," and the mother was not only "unable or unwilling to protect [her]," but was also "not providing the younger daughter with necessary information about [the defendant]." *Id.* As we explained above, that is not the case here, and it is unclear how continuing to require Feller to register as a sex offender provides any additional protection to L.F.

In summary, the district court abused its discretion in denying Feller's modification application by relying on irrelevant and improper factors. *See Fortune*, 957 N.W.2d at 707 (explaining that a district court abuses its discretion by considering improper or irrelevant factors in considering whether to grant a modification application). Excluding these factors, the record does not support

denying modification. Feller has successfully completed sex offender treatment in prison and on supervision, complied with the registry requirements for almost a decade without issue, and presented evidence through his evaluations that he is a low risk to reoffend. *See Becher*, 957 N.W.2d at 716.

In this case, remand for a new hearing to reassess Feller's application without consideration of the improper factors is unnecessary. The State acknowledged as much at oral argument, conceding that there is not enough evidence that Feller poses a threat to public safety if we exclude Feller's letters to L.F. from consideration. Thus, we remand for an order granting Feller's application.

In doing so, we note that Feller would have been removed from the sex offender registry after ten years if not for the procedural path that the State chose, which resulted in two separate case numbers instead of two counts that should have been part of a single case. *See* Iowa Code § 692A.106(1), (5). This, too, speaks to the issue of public safety because the legislature determined that Feller's crimes should only require registration for ten years as opposed to the lifetime registration he is facing absent modification. *Id.* § 692A.106(1). Our decision to remand for the district court to grant Feller's application aligns with the legislature's directive.

**III. Conclusion.**

For these reasons, we reverse the judgment of the district court, vacate the decision of the court of appeals, and remand to the district court for an order granting Feller's application.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**